IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **YOLANDA G.**[1], <br><br>        Plaintiff, <br><br>    v. <br><br>**KILOLO KIJAKAZI,** Acting Commissioner of Social Security, <br><br>        Defendant. | Case No. 3:20-cv-1842-SI <br><br> **OPINION AND ORDER** |

Lisa R.J. Porter Lang, JP LAW PC, 5200 SW Meadows Road, Suite 150, Lake Oswego, OR 97035. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Nancy C. Zaragoza, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Yolanda G. (Plaintiff) brings this action to obtain judicial review of a final decision of the

Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and for supplemental security income (SSI) under Title XVI of the Act. For the reasons below, the Commissioner's decision is affirmed.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

On May 18, 2018, Plaintiff filed Title II and Title XVI applications for SSI and DIB. AR 205-17. Plaintiff was born on August 22, 1970 and was 45 years old as of her alleged disability onset date, March 31, 2016. AR 67, 205-17. Her applications were initially denied on October 23, 2018. AR 76-77. Subsequently, Plaintiff was denied again on reconsideration on February 13, 2019. AR 106-133. Plaintiff then requested a hearing before an administrative law judge (ALJ). AR 40-66. Plaintiff appeared and testified at a hearing on March 3, 2020. *Id.* The ALJ found Plaintiff not disabled on March 30, 2020. AR 40-66. Plaintiff requested review of the ALJ's decision, which the Appeals Council denied. AR 7-12. Accordingly, the ALJ's decision is the final decision of the agency and Plaintiff seeks judicial review of that decision.

### B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R.

PAGE 3 – OPINION AND ORDER

      §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

As an initial matter for Plaintiff's DIB claim, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2016. AR 21. The ALJ then proceeded to the sequential analysis. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since March 31, 2016, Plaintiff's alleged onset date. *Id.* At step two, the ALJ determined that Plaintiff has the following severe impairments: degenerative disc disease; obesity; mild degenerative joint disease involving the knees; moderate supraspinatus with mild infraspinatus tendinosis with an interstitial tear involving the left shoulder (status post-surgery on the shoulder); history of chronic obstructive pulmonary disease in a smoker; and small fiber neuropathy. AR 22-23. At step three, the ALJ found that Plaintiff had not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23-25.

The ALJ next assessed Plaintiff's RFC. AR 25. The ALJ found that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except she was further limited to no more than occasional crawling and stooping and overhead reaching with her left upper extremity, and to no more than frequent crouching, balancing, kneeling or climbing of ramps and stairs. *Id.* The ALJ also determined that Plaintiff would be precluded from climbing ropes, ladders, or scaffolds, and would need to avoid more than occasional exposure to dust, fumes, gases, poor ventilation, and other noxious odors. *Id.* At step four, the ALJ found that Plaintiff was unable to perform any past relevant work as a nurse assistant and home attendant. AR 32. At step five, the ALJ determined that given Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that the Plaintiff could perform. AR 32-33. Therefore, the ALJ found Plaintiff "not disabled." AR 33.

## DISCUSSION

Plaintiff raises four claims of error by the ALJ: (A) the ALJ did not provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective symptom testimony; (B) the ALJ improperly discounted medical opinion evidence; (C) the ALJ did not correctly assess lay witness testimony; and (D) the ALJ failed to incorporate all of Plaintiff's limitations into Plaintiff's RFC.

**A. Plaintiff's Subjective Symptom Testimony**

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant

need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill*, 12 F.3d at 918. Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Plaintiff claimed the inability to sustain full-time work activity because of back pain, heart problems, breathing problems, knee problems, regular falls, neck problems, thyroid problems, muscle spasms, hip problems, the need for a cane and walker, small fiber neuropathy, and incontinence. Plaintiff stated that her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, complete tasks, and use her hands, and that she can walk less than a block before needing to rest for one or two hours.

The ALJ found that much of the medical record consists of treatment for various minor or transitory problems, that most of Plaintiff's claimed medical conditions were not severe, and the record did not support that those conditions would significantly affect Plaintiff's ability to work. AR 29-30. Plaintiff did not challenge the ALJ's findings at step two, which are connected to the ALJ's analysis of Plaintiff's symptom testimony, because Plaintiff claims disability based in part on many impairments the ALJ found not to be severe.

For the impairments that might affect Plaintiff's ability to work, the ALJ discounted Plaintiff's testimony because she improved with treatment, her treatment for her back pain was relatively routine and conservative, and the objective medical evidence did not support her claimed limitations. AR 29. The ALJ also found that Plaintiff's testimony that she required a walker to ambulate was inconsistent with the medical records and the fact that she applied for a job at and was hired by Taco Bell in 2018. *Id.* Each of these reasons is addressed in turn.

**1. Improvement With Treatment**

A claimant's improvement with treatment is "an important indicator of the intensity and persistence of . . . symptoms." 20 C.F.R. § 416.929(c)(3); 20 C.F.R. § 404.1529(c)(3). For example, "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Symptom improvement, however, must be weighed within the context of an "overall diagnostic picture." *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001); *see also Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not inconsistent with disability.").

Treatment records show that Plaintiff consistently reported that medication relieved her back pain, sciatica, hip pain, knee issues, and fibromyalgia. *See, e.g.*, AR 1765, 1770, 1778. Plaintiff also testified at the hearing that physical therapy and medications were "beneficial,"

AR 48, and reported to doctors that her physical therapy was "going well" and provided "good results." *See* AR 1698, 1944. Considering the record as a whole, Plaintiff's improvement with medication and physical therapy is a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's subjective symptom testimony.

### 2. Conservative Course of Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ found that Plaintiff treated her back pain with conservative treatment. AR 29. Plaintiff primarily treated her chronic pain with significant amounts of narcotic pain medication (oxycodone). At first, Plaintiff was taking four pills a day, with a prescription of 90 pills for 21 days, *see, e.g.*, AR 1778, 1784, and then her prescription was reduced to three pills a day with a prescription of 90 pills for 30 days. *See, e.g.*, AR 1789, 1794. Courts in this district regularly find, however, that a claimant consistently taking narcotic pain medication is not receiving conservative treatment. *See, e.g.*, *Tracey P. v. Kijakazi*, 2021 WL 4993021, at *15 (S.D. Cal. Oct. 27, 2021), *report and recommendation adopted sub nom. Tracey Anne P. v. Kijakazi*, 2022 WL 172842 (S.D. Cal. Jan. 18, 2022) ("The Court is not persuaded that Norco can be considered "conservative" treatment even when taken at its lowest dose."); *Bucknell v. Berryhill*, 2018

PAGE 9 – OPINION AND ORDER

WL 6198459, at *4 (C.D. Cal. Nov. 27, 2018) ("The consistent use of Norco, a strong opioid medication, cannot accurately be described as 'conservative' treatment." (citing cases)); *Caroline M.H. v. Comm'r of Soc. Sec.*, 2021 WL 5937167, at *7 (W.D. Wash. Dec. 16, 2021) ("Here, the use of Suboxone, a prescription narcotic painkiller, and hydrocortisone, a prescription steroid, cannot be characterized as conservative."); *Pires v. Comm'r of Soc. Sec.*, 2021 WL 3847705, at *7 (E.D. Cal. Aug. 27, 2021) ("Prescription narcotics and epidural injections for pain are generally not considered conservative treatment."). The Court agrees. Thus, Plaintiff's purported conservative treatment is not a clear and convincing reason to discount her subjective testimony regarding her limitations.

### 3. Use of a Walker

The ALJ found Plaintiff's testimony that she needs a walker to ambulate to be inconsistent with the evidence that Plaintiff applied for a job at Taco Bell and that Taco Bell hired Plaintiff. Plaintiff only worked for six hours at Taco Bell before she had to stop working because there was too much standing in the job and she could not sit when she wanted. AR 47. The ALJ's assumption that Taco Bell would refuse to hire a person that needs a walker is without support in the evidentiary record. Indeed, it unclear from the record whether Plaintiff used her walker during her time at Taco Bell. Her only testimony was that she could not sit at will. Further, the record is replete with references to Plaintiff's need for and use of a walker, and problems when she ambulated without a walker. *See, e.g.*, AR 635, 641, 807, 839, 924, 928, 1607, 1635. The ALJ erred by ignoring all of the record evidence relating to Plaintiff's use of a walker and simply speculating that because she was hired by Taco Bell, she must not need the walker.

### 4. Objective Medical Evidence

Finally, the ALJ found that the medical record does not support the intensity and severity of Plaintiff's symptoms. *See* AR 29. An ALJ may consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain." *Rollins*, 261 F.3d at 857. The ALJ may not, however, reject subjective testimony solely because it was not fully corroborated by objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

The ALJ noted Plaintiff's claim that her disability is caused in part by her incontinence, atrial fibrillation, thyroid problems, hip problems, and muscle spasms. AR 29. The ALJ explained, however, that the medical records do not contain objective medical evidence that these conditions cause functional limitations. The ALJ reasonably considered this as another factor in considering Plaintiff's subjective testimony.

In sum, although not all of the reasons provided by the ALJ survive review, the ALJ provided two adequate reasons for discounting Plaintiff's subjective symptom testimony, which is sufficient. *See Batson*, 359 F.3d at 1197. Thus, the ALJ did not err in evaluating Plaintiff's testimony.

## B. Medical Opinion Evidence

### 1. Standards

Because Plaintiff filed her application for benefits after March 27, 2017, Federal Regulation 20 C.F.R. § 404.1520c governs how the ALJ evaluates medical opinion evidence. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18,

2017). Under these new regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920(a)-(b). The new regulations purport to eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. The new regulations purport to eliminate the agency's "treating source rule," which gave special deference to certain opinions from treating sources. Instead, the ALJ primarily considers the "supportability and "consistency" of the opinions. *Id.* §§ 404.1520c(b)-(c), 416.920c(b)-(c). Supportability is determined by whether the opinion is supported by relevant objective medical evidence and the source's explanation for the opinion. *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2), 416.920c(c)(2).

The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* §§ 404.1520c(b), 416.920c(b). The ALJ is not required to explain how he or she considered the secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3). The secondary factors are the relationship with the claimant, specialization, and "other factors." *Id.* §§ 404.1520c(c), 416.920c(c). The Court must also continue to consider whether substantial evidence supports the ALJ's analysis. 42 U.S.C. § 405(g); *see also Hammock*, 879 F.2d at 501.

### 2. Analysis

Plaintiff argues that the ALJ erroneously rejected medical opinions from both Diana Bui PA-C and Dr. Matthew Shook, Plaintiff's treating providers. The ALJ stated that having fully

considered the medical opinions and prior administrative medical findings, he determined that the opinions of the State agency consultants are more persuasive.

### a. Ms. Bui

In June 2018, Diana Bui, PA-C opined that Plaintiff cannot work in heat, outside, around hazards, or around fumes, odors, dust, and respiratory stress and cannot do repetitive or continuous work, but can perform work under stress. The ALJ did not find Ms. Bui's opinion persuasive because "she failed to provide a narrative explanation in support of these limits" and instead "merely checked boxes on a questionnaire," and because absent "reasoned support," "the basis of these restrictions is unknown." AR 30. The ALJ also noted that the opinions of the State agency consultants Drs. Thomas W. Davenport and William Nisbet contradicted Ms. Bui's opinion. The ALJ found the opinions of Drs. Davenport and Nisbet more persuasive because they have greater expertise and provided a more reasoned explanation for their opinions than did Ms. Bui. *Id.*

Plaintiff argues that the ALJ erred in finding Ms. Bui's opinion unsupported by the record. Plaintiff notes that the record contains evidence that Plaintiff has difficulty walking, cannot walk on uneven ground, needs a walker, and has fallen, supporting Ms. Bui's opinions that Plaintiff cannot work around hazards or outside. The ALJ, however, noted medical records that showed mild or benign findings. Plaintiff also contends that the record contains evidence that Plaintiff has difficulty breathing and requires oxygen therapy, supporting Ms. Bui's opinions that Plaintiff cannot work around fumes, odors, dust and in situations causing respiratory stress. The evidence, however, supports that her oxygen need and hypoxemia generally is during sleep, in the prone position. *See* AR 1014 ("There was evidence of nocturnal baseline hypoxemia in the prone position."); 1026 ("[U]se CPAP and supplemental oxygen nocturnally pre and post operatively . . . ."). There is some support in the record that she needed oxygen short term during

exacerbated incidents of her bronchial issues. *See* AR 1661. Thus, although Plaintiff's interpretation of the record may be a reasonable one, the ALJ's interpretation was also reasonable. When there is more than one reasonable interpretation, the Court upholds the ALJ's interpretation. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Plaintiff also argues that the ALJ erred in preferring the contradictory opinions of the State agency reviewing doctors because Plaintiff contends those opinions were not based on the most recent medical records, are "irrelevant," and could not be more persuasive than Plaintiff's treating providers. The ALJ found the agency consultants had greater expertise, which Plaintiff does not challenge. Regarding the age of the medical records reviewed by the consultants, Plaintiff alleges disability as of March 2016. Dr. Thompson issued his opinion on October 18, 2018, and Dr. Nisbet issued his opinion on February 13, 2019. Plaintiff does not argue or provide evidence that her condition significantly worsened after these dates, nor did she amend her alleged disability onset date. Plaintiff's argument that the opinions of the State agency consultants are irrelevant is rejected. The ALJ did not err in discounting Ms. Bui's opinion.[2]

### b. Dr. Shook

The ALJ also considered Dr. Shook's opinion:

> Dr. Shook opined it is reasonable to expect the claimant would experience substantial difficulty with stamina, pain, or fatigue if she worked full time, eight hours a day at a sedentary or light level of exertion. Health problems would worsen were she to work fulltime at a sedentary or light exertional level. Mental health issues contribute to symptoms and functional limits. Anxiety affects her physical condition. Symptoms are frequently severe

---

[2] In her opening brief, Plaintiff argued that the ALJ should have given Ms. Bui's opinion preference because Ms. Bui was Plaintiff's treating provider. Plaintiff appears to have abandoned that argument in her reply, after the Commissioner pointed out in her response that under the new regulations treating providers are not given preference.

> enough to interfere with attention and concentration. She is not capable of low stress work. She must change position more than once every two hours. Symptoms interfere with the ability to independently initiate, sustain, or complete normal activities of daily living. She can stand and walk less than 2/8 hours. She can sit less than 2/8 hours. She can sit 10 minutes before needing to change position. She must walk around every 15 minutes for one minute. She needs to shift at will from sitting or standing or walking three times a day. She can never twist, stoop, crouch, climb stairs, or climb ladders. Reaching, pushing, and pulling are affected. She can lift 20 pounds rarely. She must avoid all exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation, and hazards. She must avoid even moderate exposure to noise. She requires a walker. She needs to "ambulate legs" due to DVT history. She would miss work at least four times a month. (Exhibit 17F).

AR 31.

The ALJ found that Dr. Shook's opinion is not persuasive because it lacks support in and contradicts the record and was not sufficiently explained. *Id.* First, the ALJ found that the record does not support Dr. Shook's opinion that Plaintiff must lie down multiple times a day after vomiting because the record does not support that vomiting is a chronic problem for Plaintiff. Second, the ALJ rejected Dr. Shook's opinion that symptoms are frequently severe enough to interfere with attention and concentration because it conflicted with record evidence that Plaintiff could concentrate on reading the newspaper and watch television, and because Dr. Shook did not explain this opinion and it was conclusory. Third, the ALJ stated that the record did not support Dr. Shook's opinion that Plaintiff needs a walker to ambulate. The Court already has rejected this latter conclusion by the ALJ as unsupported by substantial evidence in the record. The ALJ deferred to the State agency doctors, who "provided greater narrative support and considered the consistency of the claimant's subjective complaints." *Id.*

Regarding Dr. Shook's opinion relating to Plaintiff's alleged vomiting, the record includes many instances where Plaintiff denied vomiting being a problem, as cited by the ALJ

and the Commissioner. The record also contains some instances, however, where Plaintiff mentions vomiting as a problem. *See* AR 370 (June 26, 2017), 456 (February 18, 2017), 480 (March 11, 2017), 519 (November 17, 2016). The ALJ's finding that Dr. Shook's opinion that Plaintiff must lay down "multiple times a day after vomiting" is not supported by the record is a rational reading of the medical evidence. There are many instances of Plaintiff denying vomiting as a problem. Although there are a few instances where Plaintiff suffered from vomiting, it is rational to consider that a few days of vomiting over several years does not equate to multiple times a day with the frequency to interfere with the ability to work. Even if Plaintiff's interpretation that the record supports that vomiting was a limiting condition could be considered a rational interpretation, the ALJ's was also rational and thus must be upheld.

Additionally, the ALJ's conclusion that Dr. Shook's opinion relating to Plaintiff's concentration was conclusory and unsupported is also a rational reading of the record. The ALJ thus did not err in evaluating Dr. Shook's testimony.

## C. Lay Witness Testimony

The ALJ did not discuss a one-page, handwritten statement from Plaintiff's daughter, Leilani G., who stated that she cooked and shopped for Plaintiff, helped her dress and bathe, and that Plaintiff could not stand for more than 10 minutes. AR 308. The Commissioner concedes that the ALJ erred by ignoring this testimony, but asserts that the error was harmless because Leilani did not testify to any greater limitations than did Plaintiff, and the ALJ properly discounted Plaintiff's testimony. The Commissioner also argues that the error is harmless because Leilani's testimony was contradicted by medical opinion testimony that the ALJ accepted.

An ALJ's error in failing to address lay witness testimony is harmless when it is "'inconsequential to the ultimate nondisability determination' in the context of the record as a

PAGE 16 – OPINION AND ORDER

whole." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008)). The error is harmless, for example, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Id.* at 1117.

The Court agrees that Plaintiff's daughter's lay testimony was substantively the same as Plaintiff's own subjective symptom testimony. Because the Court upholds the ALJ's evaluation of Plaintiff's testimony, the ALJ's error ignoring Leilani's testimony was harmless.

### D. Medical Findings in RFC

Plaintiff asserts that the ALJ failed to incorporate all medical findings of Ms. Bui and Dr. Shook into Plaintiff's RFC, causing legal error. Because the Court upholds the ALJ's evaluation of the medical opinion evidence, however, this argument by Plaintiff is rejected.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 4th day of February, 2022.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge